Loring, J.,
dissenting:
The statute requires that purchases and contracts for supplies or services, “ when the public exigencies do not require the immediate delivery of the article or articles or performance of the service, shall be made by advertising a sufficient time previously for proposals respecting the same.” By force of the word “immediate” the exigencies referred to are of time only. And this is not a contract for “ services,” as that word is used in the statute, for there it refers to contracts on which the gervice to be rendered is the final object of the government, as in contracts for transportation, &c. But this contract is only a mode of obtaining supplies of pork, and it is not shown or claimed that the pork was needed for “ immediate delivery,” or that it could not *443 be obtained in the usual modes, and as readily as by this contract. And, all that is claimed is tíiat — the shortness of the packing season made an exigency, not for pork, but for this contract. That is not the exigency contemplated by the statute; and if it is, it is not proved, for the contract was contemplated early in September, 1864. Major Sy-monds was authorized to make the contract September 21. He had previously collected his information and statistics, and made and reported his calculations, and he made his contract the 27th of October, 1864, so that he had about five weeks in which to advertise for proposals and make his contract; and there is, I think, no evidence that shows or indicates that.this was not time enough for the purpose, or that he so thought.
If the requirement of the statute for advertising has not been complied with, the question arises whether it is directory only, or whether it is imperative. If directory only, then the officer is liable to punishment, but the contract is binding on the United States ; while, if the statute is imperative, the contract made against the law, which the contractor is to be held to know, would be invalid, and not a ground of action for him nor of liability on the part of the defendants.
The question is certainly important, for it affects every contract made without advertising by the officers of the United States, and must necessarily arise as often as such contracts are the subject of litigation here.
Whether a statute is directory or imperative does not depend on its words as negative or affirmative, for negative words may be directory only, as in the English marriage act, (5 Juris., N 5,537) and words only affirmative may be imperative, (Dwarris, 611,) and the only criterion is here, as in all cases of construction of statutes, the intent of the legislature. And the general rules of ascertaining the intent of a legislature were early fixed and have never been changed, and they seem to me sufficient for the decision of this case. They are thus reported by Lord Coke, (3 Rep., 7; Dwarris, 563:) “For the sure and true interpretation of all statutes in general, bo they penal or beneficial, restrictive or enlarging of the common law, four things are to be discerned and discovered :
“ 1. What was the common law before the making of the act 1
“ 2. What was the mischief and defect against which the common law did not provide %
“ 3. What remedy, the Parliament hath resolved andappointed to cure the disease of the commonwealth 1
“ 4. The true reason of the remedy.”
*444 It was then held (says Lord Coke) to be the duty of tbe judges at all times to make such construction as should suppress the mischief and advance the remedy, putting down all subtle inventions and evasions for continuance of the mischief ct pro privato commodo, and adding force and life to the cure and remedy according to the true intent of the makers of the act pro bono publico.
To apply these rules here—
1. What was the common law before the making of the act 1
The common law was that officers making contracts for subsistence
for the United States were free to make them at their own election, with or without advertising for proposals; and whether the contracts were made in one way or the other, the United States were bound by them.
2. The mischief was that contracts might be and were believed to have been made ignorantly or corruptly between the officers and contractors for higher prices than the market prices. (2 Opinions Attorneys General, 257.)
3. What remedy the Parliament hath resolved and appointed to cure the disease of the commonwealth.
The remedy is public advertisement for proposals, which this act specifies, and which subjects contracts to the restraint of public notice and supervision, and assures to the United States the benefits of competition. .
4. The true reason of the remedy.
The reason and the only reason was the public security, and, therefore, in the words of Lord Coke, it is “the duty of the judges at all times to make such construction as should, suppress the mischief and advance the remedy; ” that is, so to use the remedy as would make if best fulfil the'public interests.
Now, if the statute is held to be directory only to the officers making contracts, the remedy is suppressed instead of the mischief, for on contracts made without advertising for proposals the United States are liable, as on contracts made with advertising for proposals, and the advantages of competition are lost, and the election of using or not using the remedy is left to the officers whose abuse it was intended to prevent, and whose pecuniary gains in cases of fraud are to depend on their not using it. The officers are, indeed, liable to punishment; but so they were in cases of fraud before, and without the statute; so that to hold the statute directory is to make its only intent and effect to be to make officers liable to punishment when their action is without any fraudulent intent or practice against the United States.
*445 Then this statute is remedial, and it alters the common law to prevent a mischief and attain an advantage involving the public interests; and in such case the established rule of construction is that the operation of the act shall be carried to the utmost extent that its words will permit. The rule is thus stated by Mr. Dwarris, p. 618: “A statute made pro bono publico shall be construed in such manner that it may, as far as possible, attain the end proposed.” And Mr. Sedgewick, paraphrasing and citing Mr. Dwarris, says: “ So again it has been held that in the case of remedial acts everything is to*be done in advancement of the remedy that can be given consistently with any construction that can be put on it.” Now all that is to be done here to hold this statute imperative is to take the words of the statute “ in their ordinary and familiar signification and import,” (Dwarris, 573,) which every text-book makes the primary rule of construction, to be used wherever it can be.
The question here belongs to one of the many classes of cases involved in the doctrine of equitable construction by which statutes are enlarged or restricted and their language departed from by courts, so as to include cases not within their text and to exclude cases not within their reason. But equitable construction in regard to remedial statutes always tends one way, and that is to the utmost advancement towards its fullest efficiency for the end sought. Mr. Dwarris says : “ Whatever doubts may be entertained of the propriety of extending the words of statutes by equitable construction to embrace other cases— conveyances, places, persons and things, besides those contained and expressly mentioned in the act — there can be no question that the words of a remedial statute are to be construed largely and beneficially, so as to suppress the mischief and advance the remedy.”
And in determining whether a statute is directory or imperative, there is one circumstance that has always been held a decisive criterion fixing the statute as imperative, and that is that the provision of the statute, as to which the question arises, is of the substance or essence of the thing which the statute requires to be done, and not merely the form prescribed to effect it. In Rex v. Loxdale, (1.Burr, 447,) Lord Mansfield said: “ There is a known distinction between circumstances which are of the essence of the thing required to be done by an act of Parliament and clauses merely directory.” And hisillustrationis : “The precise time in many cases is not of the essence,” while on the 43 Eliz., c. 2, he says “ nobody ever thought it discretionary as to the NUMBER ” of overseers to be appointed. And Mr. Smith, in his commentaries on constitutional and statutory law, (p. 792,) says : “A distinction of the *446 rule in cases cited should be observed, that is, between cases where certain acts' to be done are of the essence of the thing required to be done by the act, in which case it is imperative; and things which are not of the essence, in the latter case it is merely directory.” And he adds : “ This is one of the criterions by which to determine whether it is imperative or merely directory.”
Now, in the case at bar, the statute provision for advertising is not only of the essence and substance of the thing required by the statute to be done, but it is the ibing itself and the whole of it; it is the very security for the public prescribed by the statute; and to hold the provision to be merely directory is to permit the injury to the public which it was intended to prevent, and which it would prevent if held to be imperative.
And even in statutes not remedial, but which are made for the public benefit, the provisions of the statute as to time even are held directory or imperative, as the public interests may require, because the promotion of these must be assumed to be the intent of the 1 gislature. Thus in the early case of Rex v. Sparrow, (2 Strange, 123,) overseers of the poor were not appointed by the justices within the time prescribed by the statute. And the court held the provisions of the statute as to time directory only, and the election of the overseers legal, and enforced their performance of their duty, because otherwise, as it said, “ the poor could not have a specific remedy.” And Mr. Sedgewick, citing cases where notices and acts required by statute had not been given or done in the time directed, adds.: “ It being for the benefit of the public, those acts may be done after the time specified.”
On the other hand, the provisions of a statute of Michigan, requiring advertisements for proposals, were held to be imperative, because the public interests so required. And the case is so analogous to this, and the reasons given for its decision so applicable here, that I think their quotation in full allowable. In The agent of the State prison v. Lathrop, (1 Michigan Reports, 438,) decided in 1850, the facts were that a statute of the State made it the duty of the agent of the State prison to let out the convicts ior labor, and prescribed that he should give twenty days’ notice in a newspaper for sealed proposals. He made a contract without advertising for proposals, and the question was as to the validity of the contract. The court said the action was in effect against the State, and it decided unanimously against the validity of the contract. The reasons for its decision are thus given :
“ With a view to insure competition, and to give every one an opportunity of bidding for the labor, the power to let the services of the *447 convicts is coupled with a requirement that the agent should give notice to the public in a specified mode and for a specified time for sealed proposals. The object of this is clearly manifest. It was intended, if possible, to prevent collusion between the agent and contractors, and to secure to the State the highest price that could he obtained for the labor of the convicts.
“It was foreseen that it was possible and even probable that the agent, in common with many public agents, might, from corrupt motives, sacrifice the interest of the State to secure to himself or his friend the benefits which it was desirable the State should derive from the services of the convicts. The legislature, therefore, wisely prescribed the mode in which the agency was to be executed; and if it was not intended this mode should be pursued, why was it prescribed by the law and connected with the acts authorized to be done 1 There are no general terms used in the law which denote an intention to clothe the agent with discretionary powers as to the mode of letting contracts. He is simply authorized to do certain things in a certain way, and all this is set forth in a public law, which all may read and which all are bound to notice, and particularly all who may attempt to execute any power under it or derive any benefit from its provisions. It distinctly points out the extent of the power given and the mode of its exercise, and says to agent and contractor, this is the way, walk ye in it. I therefore think that that part of the section which is claimed to be directory enters into and gives effect to the power itself, and is a limitation upon it, and that any attempt to bind the State without observing all the prescribed proceedings must be abortive.”
I think these reasons are applicable to the case at bar.
It may perhaps be possible that the wide alternative given by the statute, either of contracts or purchases on advertising for proposals, or of contracts or purchases without advertising, in any exigency of time, may not be broad enough to prevent inconvenience in some conceivable case. But the statute is made for the security of the United States in the transaction of those affairs which are necessarily of certain, regular, and constant recurrence, and so involve their daily welfare. And it is not made for an emergency which can rarely and may never happen — and no statutes are. And, therefore, inconveniences rarely happening are not admitted as a reason for equitable construction. Mr. Dwarris says, (p. 627:) “If the words of a statute do not reach to an inconvenience rarely happening, they shall not be extended to it by an equitable construction, for the objects of statutes are mischiefs queefrequentius accedunt.
*448 I think the provision of the slatute in question here is imperative, because:
1. It is remedial and made “pro bono publico!’ and is, therefore, to be so construed as to suppress the mischief and advance the remedy.
2. Because it seeks to secure to the public the advantages of competition, and is to be so construed as to effect that purpose.
3. Because the requirement of advertising for proposals is of the essence and substance of the thing required by the statute to be done, and the very thing itself.
4. Because the ordinary and familiar import and signification of the words of the statute are plain and not to be questioned, and have full scope in its subject. And I concur with the learned judge who said : “ I am not well satisfied with the summary mode of getting rid of a statutory provision by^calling it directory.” (Quoted, Sedgewick, 377.)
For the reasons stated I think the objections of the assistant solicitor are valid, and that the contract is not binding on the defendants, and that they are entitled to judgment.
J. Smith Speed et al. v. The United States. In this case my opinion is that the defendants are entitled to judgment for the reasons given in the case of Robert Floyd v. The United States.
Nott, J., agreed with Casey, C. J.
Peck, J., held as a matter of fact that an “exigency ” was shown.
Wilmot, J., was absent by reason of illness, and took no part in the decision.